IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 07-cv-01145-DME-KMT

GENERAL STEEL DOMESTIC SALES, LLC,
d/b/a GENERAL STEEL CORPORATION, a Colorado Limited Liability Company,

      Plaintiff,

v.

STEELWISE, LLC, a Colorado limited liability company,
HAROLD G. DONAHUE, individually,
DANA BEERS, individually,
SUE BEERS, individually, and
KIRK JARVIS, individually,
ADAM SCHRAGER, individually,

      Defendants,

and

GETA ASFAW, an individual
BOWEN BANBURY, an individual
DARREL BROWN, an individual
TOTI CADAVID, an individual
JANICE CAMPBELL, an individual
JOE CONRAD, an individual
COUNCIL OF BETTER BUSINESS BUREAUS, INC., a Delaware corporation,
DENVER BOULDER BETTER BUSINESS BUREAU, a business membership organization,
LARRY DUDMAN, an individual
HOPE MARIE DUNLAVEY, an individual
MATTHEW FEHLING,
GANNETT, CO., INC.,
BARBARA GRIMM, an individual,
BRECKENRIDGE GROVER, an individual,
JEAN HERMANN, an individual,
KENNETH J. HUNTER, an individual,
MARK JOHNSON, an individual,

JERALD KAISER, an individual,
TONY KING, an individual,
DONLEE LANE, an individual,
TAMELA LEE, an individual,
JEFF METZ, an individual,
ROB NAISH, an individual,
DEAN PISCIOTTA, an individual,
MARK RENN, an individual,
CRAIG REYNOLDS, an individual,
JON ROBINSON, an individual,
CARRIE KING ROSSMAN, an individual,
STEVEN SALTER, an individual,
BILL STEVENSON, an individual,
JOE TOSCANO, an individual,
CHIP YOST, an individual,

  Consolidated Defendants.

**ORDER**

  This matter is before the court on "Defendants Gannett Co., Inc.'s and Chip Yost's Motion for Stay of Discovery Pending Rule 12 Motions" ("Stay Motion" [Doc. No. 131, filed July 18, 2008]) and "Defendants Gannett Co., Inc.'s, Chip Yost's and Adam Schrager's Motion for Protective Order Pursuant to Fed. R. Civ. P. 26(c)(1)"("Mot. P.O." [Doc. No. 197, filed October 14, 2008]). Both motions seek the protection of the court to shield the Gannett Co. Inc., Chip Yost and Adam Schrager[1] (hereinafter "9 News Defendants") from participation in the

---

[1]   Schrager, having been added as a defendant by the Second Amended Complaint, has joined in the previous motions filed by Yost and Gannett. [Doc. No. 198, filed October 14, 2008].

2

normal discovery process until after the court rules upon their pending Motion to Dismiss [Doc. No. 166, filed September 25, 2008].

Both motions have been fully briefed and are ripe for this court's review.

## I. *Procedural Background*[2]

In 2003 the Colorado Attorney General and the Sacramento District Attorney began investigating General Steel Domestic Sales, LLC (hereinafter "General Steel") for various alleged violations of the Colorado Consumer Protection Act ("CCPA") and California consumer protection laws, respectively. In response to the Colorado Attorney General's enforcement activities, General Steel sued numerous parties in several different forums alleging conspiracy by certain parties to create a false impression that General Steel was violating consumer protection laws, engaging in unfair business practices, and advertising illegally. Among the suits, General Steel filed a complaint in early 2006, in the U.S. District Court for the Eastern District of California, alleging the defendants therein conspired together in violation of the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, to ruin General Steel's business and violated General Steel's civil rights under 42 U.S.C. § 1983. Defendants Denver Boulder Better Business Bureau, Jean Herman, Matthew Fehling, Carrie King Rossman, Joe Toscano, Tony King, Hope Marie Dunlavey, Darrel Vessels, Mark Renn, Larry Dudman, Geta Asfaw, Bowen Banbury, Dwight Brown, Janice Campbell, Joe Conrad, Barbara Grimm, Breckenridge Grover, Mark Johnson, Jerald Kaiser, Donlee Lane, Tamela Lee, Jeff Metz, Dean

---

[2] The procedural history of the case is taken from the more detailed rendition in Judge David Ebel's Order dated April 11, 2008, Doc. No. 114.

Pisciotta, Jon Robinson, Steven Salter, David Smith, Bill Stevenson, Toti Cadavid, Suzanne Shaw, Judith Spires, Deborah Wiest, Darrel Brown, Steve Budnack, Bob Naish, Ressie Pate, Craig Reynolds, Jon Robinson, Steven Salter, Allan Service, and Council of Better Business Bureaus, Inc. (collectively, the "BBB defendants") sought a stay of the California federal proceedings. The key cases which were pending at the time are set forth with particularity in Judge Ebel's April 11, 2008 Order.

Both the Colorado Attorney General actions and the Sacramento District Attorney action settled early in 2007, resulting in the entry of consent decrees in January 2007 (the Sacramento action) and March 2007 (the Colorado action). The Eastern District of California then transferred its case to the District of Colorado pursuant to 28 U.S.C. § 1404. *See General Steel Domestic Sales, L.L.C. v. Suthers*, Civil Action No. S-06-411 LKK/KJM, at 7-8 (E.D. Cal. Oct. 10, 2007). The Colorado federal court consolidated the BBB defendants' case with *General Steel Domestic Sales, L.L.C. v. Steelwise*, in which General Steel had sued the entities and individuals whom the Eastern District of California had previously dismissed for lack of personal jurisdiction.

The Second Amended Complaint in the consolidated action was filed and docketed on August 26, 2008. [Doc. No. 147]. Of the 9 News Defendants, Adam Schrager was added to the case for the first time. The 9 News Defendants filed a Motion to Dismiss on September 25, 2008. [Doc. No. 166]. All parties with the exception of the 9 News Defendants, have conducted extensive discovery, including more than 32 depositions and thousands of pages of documentary discovery and expert reports. The 9 News Defendants claim they have not yet engaged in any

4

written discovery in this matter but that General Steel has propounded such discovery to them. The 9 News Defendants have refused to respond in reliance on D.C.COLO.LCivR 30.2A . [Doc. No. 206, ¶¶ 3, 5].

The 9 News Defendants now seek a stay via a protective order to delay filing responses, including objections, to General Steel's written discovery requests (Mot. P.O., Exhibits 1 and 2) until thirty (30) days after the District Court rules upon their Motion to Dismiss.[3]

## II. *Standard of Review*

A protective order staying discovery pending determination of a dispositive motion is an appropriate exercise of this court's discretion. *Landis v. North American Co.*, 299 U.S. 248, 254-255 (1936). The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the matters on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. *Kansas City Southern Ry. Co. v. United States*, 282 U.S. 760, 763 (1931). While discovery may, in a proper case, be stayed pending the outcome of a motion to dismiss, "the issuance of a stay is by no means automatic." *In re WRT Energy Secs. Litig.*, 1996 WL 580930, at *1 (S.D.N.Y., 1996).

In considering whether a stay of all discovery between the 9 News Defendants and the other parties in the case pending the outcome of the 9 News Defendants' Motion to Dismiss is

---

[3] Several other defendant groups have also filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b).

warranted, a particularized analysis is required because such an inquiry is necessarily fact-specific and depends on the particular circumstances and posture of each case. In this case, unlike cases not involving activities of news media personnel, the public interest in the protection of First Amendment free speech and news reporting are a primary consideration and must take center stage.

In addition to the court's power to control the litigation through a stay of discovery, Fed. R. Civ. P. 26(c) provides

> (C) When Required. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>> 
>> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>> 
>> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

*Id.*

In assessing the propriety of a stay, this court must consider: whether the movant is likely to prevail in the related proceeding; whether, absent a stay, any party will suffer substantial or irreparable harm; and, the public interests at stake. *Landis* at 254 (1936); *United Steelworkers of America v. Oregon Steel Mills, Inc.,* 322 F.3d 1222, 1227 (10th Cir. 2003). Two related factors a court may consider in deciding a motion for a stay of discovery are the breadth of discovery

sought and the burden of responding to it. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Coors*, 357 F. Supp. 2d 1277, 1280 (D. Colo. 2004)(citing *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 1996 WL 101277, *3 (S.D.N.Y., 1996)); *Von Drake v. National Broadcasting Co., Inc.*, 2004 WL 1144142, *1 (N.D. Tex., 2004). Finally, a court should also consider the strength of the dispositive motion that is the basis of the discovery stay application. *See, e.g., Gandler v. Nazarov*, 1994 WL 702004, at *4 (S.D.N.Y., 1994) (stay of discovery should be granted where motion to dismiss "is potentially dispositive, and appears to be not unfounded in the law."). *See Spencer Trask Software and Information Services, LLC v. RPost Intern. Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y., 2002)

The underlying guiding principle when considering a full or partial discovery stay is that "[t]he right to proceed in court should not be denied except under the most extreme circumstances." *Commodity Futures Trading Com'n v. Chilcott Portfolio Management, Inc.,* 713 F.2d 1477, 1484 (10th Cir.1983)(quoting *Klein v. Adams and Peck,* 436 F.2d 337, 339 (2d Cir.1971). In other words, stays of the normal proceedings of a court matter should be the exception rather than the rule.

### III. Analysis

#### A. Newsperson Privilege

Colo. Rev. Stat. §13-90-113(2), the so-called 'Newspersons' Privilege Statute' provides

> Notwithstanding any other provision of law to the contrary and except as provided in subsection (3) of this section, no newsperson shall, without such newsperson's express consent, be compelled to disclose, be examined concerning refusal to disclose, be subjected to any legal presumption of any kind, or be cited, held in contempt, punished, or subjected to any sanction in any judicial proceedings for refusal to disclose any news information received, observed, procured, processed, prepared, written, or edited by a newsperson, while acting in the capacity of a newsperson;

C.R.S. § 13-90-119.

Notably, the privilege does not apply to b) "News information which has actually been published or broadcast through a medium of mass communication;" C.R.S. 13-90-119(2)(b).

The statute also provides

> (3) Notwithstanding the privilege of nondisclosure granted in subsection (2) of this section, any party to a proceeding who is otherwise authorized by law to issue or obtain subpoenas may subpoena a newsperson in order to obtain news information by establishing by a preponderance of the evidence, in opposition to a newsperson's motion to quash such subpoena:
> 
> (a) That the news information is directly relevant to a substantial issue involved in the proceeding;
> 
> (b) That the news information cannot be obtained by any other reasonable means; and
> 
> (c) That a strong interest of the party seeking to subpoena the newsperson outweighs the interests under the first amendment to the United States constitution of such newsperson in not

> responding to a subpoena and of the general public in receiving news information.

*Id.*

The statutory privilege is often encountered in defamation-type claims and puts limits on discoverability of certain evidence. If invoked, the privilege allows a safe haven for a newsperson's refusal to disclose certain types and kinds of information collected in his capacity as a person reporting news. One way to pierce the protection of the statute, if when the opposing party makes a showing of probable intentional falsehoods in the newsperson's allegedly defamatory statements at the time the statements were made. *Gordon v. Boyles*, 9 P.3d 1106, 1109 (Colo., 2000) A claim of intentional falsity concerning the newspersons' media activities is an integral part of the balancing test required by the third prong of the newsperson's statutory privilege under section 13-90-119(3) because the First Amendment was not designed to protect the reporting and dissemination of false statements. *Id.*

In this case, General Steel claims, among other allegations, that the 9 News Defendants' media coverage of certain investigations undertaken state actors was false and misleading. The newspersons' privilege however, when invoked, must be directed at specific questions or requests for documents given the number of exceptions in the statutory provisions. For instance, the 9 News Defendants have stated that General Steel's initial discovery sought "any and all news reports and supporting documents since January 1, 2002 related to stories that the 9 News Defendants may have generated about any companies other than General Steel in which the Colorado Attorney General's Office, the Denver/Boulder Better Business Bureau or

representatives of the Colorado state legislature may have been a source of information." (9 News Defendants' Motion for Prot. Ord. [Doc. No. 197, ¶25; Exhibit 1, Doc. No. 97, ¶ ¶ 22-23). While responding to such a broad interrogatory may be burdensome or oppressive as well as expensive, by its very terms "any and all news reports" suggests that the interrogatory is seeking information about "[n]ews information which has actually been published or broadcast through a medium of mass communication" – an exception to the newsperson privilege of nondisclosure. The court's review of General Steel's interrogatories does reveal instances which seem to seek information about news "sources" which, more often than not, would be protected material.

Standing alone, however, the existence in the case of information which may well be protected from disclosure pursuant to C.R.S. § 13-90-119 does not justify staying all discovery as to only a select few of the defendants in the case. At some point the parties and perhaps the court will be called upon to parse the information sought against the responses given in light of the privilege; however, the statute is not a wholesale exemption upon newsperson litigants from compliance with discovery rules and schedules.

The privilege is, however, relevant to the issue of whether discovery from the 9 News Defendants should be stayed under Rule 26(c) as being oppressive or unduly burdensome or expensive to a party, in light of the other factors which the court must consider. The careful weighing of each piece of responsive information in light of the newspersons privilege to prevent the unintended waiver of the privilege by the 9 News Defendants will be extremely time and manpower intensive and require significant expense given the breadth of the interrogatories

provided to the court for review. The court will weigh the unique aspects of the newsperson's privilege and its undisputed potential application in the case when considering the broader question of whether intensive discovery of this type and kind is merited at this juncture of the case with respect to these defendants and the claims against them.

### B. *First Amendment*

Again, the unique aspect of this group of defendants is that they are without cavil newspersons who claim to have been news gathering and reporting matters of public interest in connection with the investigations of General Steel. This court is mindful of the sensitivity of First Amendment speakers and the chilling effect voluminous, expensive and overly burdensome discovery requests may have on free speech and the duty of newspersons to report matters of public concern. This case clearly implicates the 9 News Defendants' First Amendment rights.

The plaintiff has alleged the following claims against the 9 News Defendants: (1) deprivation of equal protection rights in violation of 42 U.S.C. § 1983 ("Section1983") (First Claim for Relief); (2) deprivation of due process rights in violation of 42 U.S.C. §1983 (Second Claim for Relief); (3) conspiracy to deny constitutional rights in violation of 42 U.S.C. § 1983 (Third Claim for Relief); (4) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (Fourth Claim for Relief); conspiracy to violate RICO, 18 U.S.C. § 1962(d) (Fifth Claim for Relief); intentional interference with contract (Ninth Claim for Relief); and intentional interference with prospective business advantage (Tenth Claim for

Relief). (Second Amended Complaint ("SAC"), [Doc. No. 147], ¶¶ 216-263. 316-330 and 333-414).

The claims all concern news gathering and news reporting activities of the 9 News Defendants which, at first blush, are activities which are presumptively protected by the First Amendment. *See Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 103 (1979)(routine news gathering and reporting activities are protected by and privileged under the First Amendment); *Branzburg v. Hayes*, 408 U.S. 665, 707 (1972) ("news gathering is not without its First Amendment protections.") The plaintiff, however, asserts that the 9 News Defendants were engaging in false reporting and colluding with other co-defendant groups with the intent to purposefully harm the plaintiff and receive economic gain through increased ratings, among other allegations. These allegations, if sufficiently proven, might remove the mantle of the First Amendment protection from the activity. (SAC ¶60; "Plaintiff's Response to Defendants Gannett Co., Inc.'s and Chip Yost's Motion for Stay of Discovery Pending Rule 12 Motions," Doc. No. 138 at 8).

The right recognized by the Supreme Court in *Branzburg* is not unlimited: "The right to speak and publish does not carry with it the unrestrained right to gather information." *Zemel v. Rusk*, 381 U.S. 1, 17 (1965); *Oklahoma Hosp. Ass'n v. Oklahoma Pub. Co.*, 748 F.2d 1421, 1425 (10th Cir.,1984). Thus, the Supreme Court has recognized that, whatever the extent of protection warranted toward news gathering, it is no greater than the right of the general public to obtain information. *Pell v. Procunier*, 417 U.S. 817, 834(1974) ("The Constitution does not ... require

12

government to accord the press special access to information not shared by members of the public generally.") *Accord, Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978).

### C. *Oppressive and Burdensome Discovery*

The Supreme Court has underscored that "the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery [to protect] 'a party or person from annoyance, embarrassment, [or] oppression....' " *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (quoting Fed.R.Civ.P. 26(c)(1)); *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648 -649 (10th Cir., 2008). Under our rules, parties to civil litigation are given broad discovery privileges. But with those privileges come certain modest obligations, one of which is the duty to state discovery requests with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A). All-encompassing demands take scant account of that responsibility. *See Regan-Touhy* at 649 -650. Though what qualifies as "reasonabl[y] particular" depends at least in part on the circumstances of each case, a discovery request should be sufficiently definite and limited in scope that it can be said "to apprise a person of ordinary intelligence what documents are required and [to enable] the court ... to ascertain whether the requested documents have been produced." 8A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2211, at 415. *See also,* MANUAL FOR COMPLEX LITIGATION § 11.443 (Federal Judicial Ctr., 4th ed.2004)("In overseeing document production, the court should ... prevent indiscriminate, overly broad, or unduly burdensome demands ... such as those for 'all documents relating or referring to' a ... claim....").

In considering the plaintiff's written discovery requests directed at the 9 News Defendants, it is foreseeable that the 9 News Defendants will consider some of the requests overreaching, overbroad and protected by certain privileges. However, a complete stay of discovery is not the only, or even the proper, vehicle to restrain an exuberant plaintiff if overbroad requests are presented. Rather, the 9 News Defendants should respond to each interrogatory or request for documents in the manner they deem legally prudent and proper, the parties should confer over any disagreements and attempt amicable resolution and, if necessary, then file appropriate motions with the court.

### D. Strength of Dispositive Motion

To state a claim, a plaintiff's complaint must "show[ ] that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). This means that the plaintiff must allege enough factual matter, taken as true, to make his "claim to relief ... plausible on its face." *Bell Atlantic Corp. v. Twombly*, ---U.S. ----, 127 S.Ct. 1955, 1974 (2007). This is not to say that the factual allegations must themselves be plausible; after all, they are assumed to be true. It is just to say that relief must follow from the facts alleged. *See Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir.2008)( the term plausible cannot mean "likely to be true; rather, "plausibility in this context must refer to the scope of the allegations in a complaint . . .) If a complaint explicitly alleges every fact necessary to win at trial, it has necessarily satisfied this requirement. *Bryson v. Gonzales,* 534 F.3d 1282, 1286 (10th Cir., 2008).

Mounting a successful Fed. R. Civ. P. 12(b) challenge to completely prevail on all claims in a complex, long term, multi-defendant action is a daunting task. The issue in reviewing the sufficiency of a plaintiff's complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to even offer evidence to support his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *(overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982))*. Obviously, the justice system is set up to allow parties their "day in court" if possible. *Bell Atlantic* did not mark a sea change in analyzing 12(b) motions in many respects.. As the Court explained in a case decided two weeks after *Bell Atlantic*, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (*quoting Bell Atlantic*, 127 S. Ct. at 1964); *see Alvarado v. KOB-TV, L.L.C. (Channel 4 News)*, 493 F.3d 1210,1215 at n.2 (10th Cir. 2007)(stating that *Bell Atlantic* and *Erickson* suggest "courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief"); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (courts must take as true "all plausible, non-conclusory, and non-speculative" facts alleged in a plaintiff's complaint).

While a stay of all discovery is generally disfavored in this District, *Chavez v. Young American Ins. Co.*, 2007 U.S. Dist. LEXIS 15054 (D. Colo. Mar. 2, 2007); *Ruampant v. Moynihan*, 2006 U.S. Dist. LEXIS 57304 (D. Colo. Aug. 14, 2006), a stay may be appropriate if

"resolution of a preliminary motion may dispose of the entire action." *Nankivil v. Lockheed Martin Corp.*, 216 F.R.D. 689, 692 (M.D. Fla. 2003).

Weighed against this steep burden on the moving party, the plaintiff has filed a comprehensive Second Amended Complaint, consisting of 426 paragraphs in 88 pages. The 9 News Defendants' 48 page Brief in Support of its Motion to Dismiss sets forth approximately 19 grounds to dismiss 5 claims for relief and various state law claims, and is supported by 12 exhibits [Doc. No. 167]. The plaintiff's 49 page response lists at least 16 legal arguments refuting the dismissal claims brought by the 9 News Defendants. For this court to fully explore the strength of the defendants' Motion in all aspects at this stage would be a waste of substantial judicial resources since the motion will ultimately be decided by Judge Ebel, not this court. While I do not presume to opine concerning the outcome of the Motion to Dismiss, both statistically and in consideration of the burden on the moving party, there is a substantial likelihood the 9 News Defendants will not prevail on all issues raised in the pleadings. Further, even should they prevail, all of the issues in the case would not be resolved, an important aspect of the analysis when considering a stay of discovery.

### E. *Prejudice to Other Parties*

At this stage of the case the plaintiff and the defendant party groups other than the 9 News Defendants have considerable litigation activity under their collective belts. These parties are likely to intimately know their opponents and many of the potential witnesses. The newest additions to the fray are the 9 News Defendants, particularly Mr. Schrager.

Staying the discovery in a long running complicated case such as this as to only one particular intertwined set of defendants will most certainly disadvantage and prejudice all the other parties, including those more closely aligned with the 9 News Defendants than is the plaintiff. The allegations in the case include both conspiracy allegations and RICO violations. In both instances it will be necessary for the plaintiff to establish the alleged interwoven relationships constituting implicit and explicit agreements among and between the parties and formulate a theory supporting the allegation of a cohesive and linked enterprise with a communal purpose to harm and disrupt General Steel. That inherent challenge would be rendered largely impossible if the plaintiff is not allowed to seek discovery from all of the parties it alleges were part of the collective web.

Undoubtedly, there is potential prejudice to the 9 News Defendants should they prevail on their Motion to Dismiss on all the various theories now pending before Judge Ebel.[4] However if their victory is not complete, on all remaining claims the 9 News Defendants will be even further behind the other parties in the discovery process than they are at this juncture; that situation will likely cause prolonged delay for everyone involved in actually preparing for and conducting a trial in this case. On balance, then, the prejudice to the plaintiff and the other party defendants which would be caused by a stay of discovery as to the 9 News Defendants outweighs the

---

[4] The 9 News Defendants' Motion to Dismiss is not yet fully briefed nor is it ripe for review. The Motion was filed on September 25, 2008 [Doc. No. 166] and the plaintiff's response was filed on November 14, 2008. [Doc. No. 215]. On November 21, 2008, the court ordered the 9 News Defendants to file any reply brief on or before December 9, 2008. [Order, Doc. No. 221].

prejudice to the 9 News Defendants in going forward with discovery while at the same time pressing forward on the outstanding Rule 12(b) motions.

### *IV.    Conclusion*

Given all the considerations listed with particularity above, I find that a stay of all discovery with respect to the 9 News Defendants is inappropriate and unwarranted at this time.

It is therefore **ORDERED**:

1. Defendants Gannett Co., Inc.'s and Chip Yost's Motion for Stay of Discovery Pending Rule 12 Motions [Doc. No. 131] is **DENIED**.

2. Defendants Gannett Co., Inc.'s, Chip Yost's and Adam Schrager's Motion for Protective Order Pursuant to Fed. R. Civ. P. 26(c)(1) [Doc. No. 197] is **DENIED**.

Dated this 26th day of November, 2008.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge